UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NATALIE D. SIMMS, *Plaintiff,* | § § § § | |
| vs. | § § § | Civil Action No. 5:18-CV-00211-DAE |
| CITY OF SAN ANTONIO, TEXAS, and MARA LYNN WILSON, *Defendants.* | § § § § § | |

**DEFENDANT MARA LYNN WILSON'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Defendant MARA LYNN WILSON (hereinafter "Defendant" or "Wilson"), and files this, her Reply to Plaintiff's Response to the Motion for Summary Judgment Filed by Mara Lynn Wilson, and in support thereof would show unto the Court as follows:

**I.**

On December 20, 2018, Defendant filed her Motion for Summary Judgment.[1] On December 21, 2018, Plaintiff filed her Motion for Summary Judgment.[2] Defendant filed her Response to Plaintiff's Motion for Summary Judgment on January 31, 2019.[3] Plaintiff filed her Response to Defendant's Motion for Summary Judgment on January 31, 2019.[4]

**II.**
**Objections to Plaintiff's Summary Judgment Evidence**

Defendant objects to the following statements by Internal Affairs Investigator Sergeant Kimberly A. Bowers cited in support of Plaintiff's Response to Defendant's Motion for Summary Judgment on the basis set forth below:

---

[1] Docket No. 55.
[2] Docket No. 58.
[3] Docket No. 70.
[4] Docket No. 65.

> • After talking to Nzeka and officers I learned that Ms. Starks was on the other side of the street where Det. Larios and Det. Clancy were walking. I also learned after talking to Ms. Starks that Ms. Starks saw the search of Ms. Nzeka by Det. Wilson.

Defendant objects to this statement as being inadmissible hearsay regarding where Starks, Larios and Clancy were walking and whether Starks saw the search of Nzeka by Wilson.[5]

> • **13:45** - Another vehicle (3rd) drives by the search of Nzeka and Wilson has a flashlight pointed at Nzeka's pubic region.

Defendant objects to this statement as being inadmissible hearsay and speculation on the part of Bowers as to whether the flashlight is pointed at Nzeka's pubic region.[6]

> • **14:27** - At this time Wilson pulls Nzeka's sweats, white shorts, and underwear forward so she can look at Nzeka's pubic area. At the same time Wilson is flash lighting Nzeka's pubic area so Wilson can get a better look.

Defendant objects to this statement as being inadmissible hearsay and speculation on the part of Bowers as to whether Wilson pulls Nzeka's underwear forward, whether Wilson is "flash lighting" (sic) Nzeka's pubic area, and, without admitting Wilson was illuminating Nzeka's pubic area, Wilson's motive for doing so.[7]

> • Wilson- "You wearin a tampon too?" Wilson says this because she has also noticed that Nzeka is wearing a pad.

Defendant objects to this statement as being inadmissible on the basis it is speculation on the part of Bowers as to why Wilson made the statement attributed to Wilson.[8]

> • Nzeka- "Yes" and _you can tell both through her body posture and voice inflection that she is embarrassed_.

Defendant objects to this statement as being inadmissible on the basis Bower's conclusion

---

[5] *See* FED. R. EVID. 602, 801, and 802; Docket No. 65, p. 4.
[6] *Id.*
[7] *Id.*
[8] *Id.*

Nzeka is embarrassed is speculation on Bowers' part.[9]

- **15:05 -** you can see Wilson turning to her right to look at someone. After I spoke to officers that were at the scene I discovered that Ms. Starks and several officers were standing on the curb opposite of Nzeka, in the direction of where Wilson stopped and looked as she was holding the tampon.

Defendant objects to this statement as being inadmissible hearsay within hearsay as to where Starks and officers were standing when Wilson was holding the tampon, and further implies Starks and the officers observed Wilson holding the tampon, which calls for speculation on the part of Bowers.[10]

- **15:22-** Wilson "When I search you be still and don't move. (<u>Nzeka was not free to leave, Wilson ordered her to be still</u>.)

Defendant objects to this statement as being an inadmissible legal conclusion on the part of Bowers.[11]

- Wilson – "Either you're very hairy or what's this down here?" Wilson is continuing to search inside of Nzeka's pubic area.

Defendant objects to Bowers' statement Wilson is continuing to search "inside of Nzeka 's pubic area" as being speculation on Bowers' part.[12]

- I learned later from Nzeka that Wilson was squeezing Nzeka's vaginal lips together.

Defendant objects to this statement as being inadmissible hearsay.[13]

- **16:41** – Wilson – tells Nzeka to "turn around" because it appears Nzeka is uncomfortable being searched.

Defendant objects to this statement as being inadmissible speculation as to why Wilson told Nzeka to turn around and whether Nzeka was uncomfortable being searched, and if so, why Nzeka was uncomfortable being searched.[14]

---

[9] *See* FED. R. EVID. 602, 801, and 802; Docket No. 65, p. 5.
[10] *Id.*
[11] *Id*.
[12] *Id.*
[13] *Id*.
[14] *See* FED. R. EVID. 602, 801, and 802; Docket No. 65, p. 6.

Based on Defendant's objections set forth above, Defendant requests the Court strike all of the above statements cited in support of Plaintiff's Response to Defendant's Motion for Summary Judgment.

### III.
### Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment

**a.    Defendant Is Entitled to Summary Judgment Because Plaintiff Did Not Submit Evidence Establishing a Genuine Issue of Material Fact Regarding the Constitutionality of Defendant's Search & Seizure of Plaintiff.**

The Constitution does not forbid all searches and seizures, but only unreasonable searches and seizures.[15]  Plaintiff appears to allege that Defendant's search and seizure of Plaintiff was unconstitutional because Defendant did not have a warrant to search Plaintiff.[16]  There are several exceptions to the probable cause and warrant requirements, including consent searches.[17]  The Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.[18]  Despite her claim she did not consent to the search of her person, Plaintiff admitted in a video interview she had given consent to the search of her person and her vehicle.  As seen on the video recordings of Special Victims Unit Detective John Zuniga's two interviews with Plaintiff, on August 9, 2016 and August 11, 2016, Plaintiff told Detective Zuniga during his two interviews that she consented to the search of her person and her vehicle.[19]  Additionally, Detective Larios testified Plaintiff consented to both the search of her person and her vehicle.[20]  Detective Larios also testified he informed Defendant that Plaintiff consented to the search.[21]

---

[15]  *Elkins v. U.S.*, 364 U.S. 206, 222 (1960).
[16]  Docket No. 65, p. 3.
[17]  *Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1093 (5th Cir. 1997).
[18]  *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991) (*citing Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1990)).
[19]  Exhibit "B-1" to Defendant Wilson's MSJ, Aug. 9, 2016 at 13:01:04; 13:14:25; Aug. 11, 2016 at 15:54:25.
[20]  Docket No. 55-2, p. 61.
[21]  *Id*.

Defendant's search of Plaintiff must be analyzed under the reasonableness standard of the Fourth Amendment.

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.[22]

The need and justification for Defendant's search of Plaintiff outweighs any alleged invasion of Plaintiff's Fourth Amendment rights. Plaintiff focuses much of her Response on the place in which the search was conducted. Defendant conducted the search of Plaintiff looking for evidence of narcotics and the search was not excessively intrusive in light of the totality of circumstances Defendant faced on the date of this incident.[23] Although the search was conducted on a public street, Defendant conducted the search in a private and reasonable manner in an effort to minimize any anxiety, discomfort, or humiliation that Plaintiff might have experienced.[24] Plaintiff's assertion that she taunted with the tampon removed from her vagina[25] is pure argument and not supported by the record.[26] The Fifth Circuit held in *Carnaby v. Houston*, "although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."[27] The court "need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'"[28] As

---

[22] *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (*citing United States v. Ramsey*, 431 U.S. 606 (1977); *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975); *Terry v. Ohio*, 392 U.S. 1 (1968); *Katz v. United States*, 389 U.S. 347 (1967); *Schmerber v. California*, 384 U.S. 757 (1966)).
[23] Exhibit "C", pp. 2-3 to Defendant Wilson's MSJ.
[24] *See* Exhibit "C", p. 3; Exhibit "E" p. 2; Exhibit "F", p. 2; Exhibit "G", p. 2; Exhibit "H", p. 1; Exhibit "I", p. 2 to Defendant Wilson's MSJ.
[25] Docket No. 65, p. 9.
[26] *See* Exhibit "C-1" to Defendant Wilson's MSJ.
[27] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (2011) (*citing Scott v. Harris*, 550 U.S. 372 (2007)).
[28] *Id*.

seen on the dash cam video, Defendant did not hold Plaintiff's tampon for purposes of embarrassing or humiliating Plaintiff, but reasonably believed the string was attached to drugs.[29] Moreover, Defendant did not conduct a strip search or body cavity search of Plaintiff[30], as defined by the SAPD General Manual relied upon by Plaintiff.[31] Defendant respectfully submits she is entitled to summary judgment because Plaintiff did not raise a genuine issue of material fact regarding the constitutionality of Defendant's search and seizure of Plaintiff.

**b.     Plaintiff's Allegation Defendant Violated SAPD Policies Is Without Merit**

At no point during the search were Plaintiff's genitals, buttocks, anus, or breasts exposed.[32] Defendant did not penetrate Plaintiff or visually or manually inspect Plaintiff's vagina, buttocks, or anus.[33] Defendant's search of Plaintiff does not fit within the definition of either a strip or body cavity search as defined by the SAPD General Manual, which Plaintiff appears to heavily rely upon.[34] Assuming for purposes of argument only, Plaintiff's allegation Defendant violated SAPD policy was true, "[u]nder § 1983, the issue is whether [Defendant] violated the Constitution, not whether [she] should be disciplined by the SAPD. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without subjecting them to increased liability under § 1983."[35] The *Darden* case cited by Plaintiff only holds the existence of police department policies and the corresponding notice to officers "is relevant in analyzing the reasonableness of a particular use of force under the totality of the circumstances."[36] *Darden* does not hold the existence of police department policies and the violation of those policies, in itself,

---

[29] *See* Exhibit "C-1" to Defendant Wilson's MSJ.
[30] Exhibit "C", pp. 2 -3; *See* Exhibit "C-1" to Defendant Wilson's MSJ.
[31] Docket No. 65, pp. 6 – 7.
[32] Exhibit "C", p. 2 to Defendant Wilson's MSJ; *See* Exhibit "C-1" to Defendant Wilson's MSJ.
[33] Exhibit "C", p. 3; *See* Exhibit "C-1" to Defendant Wilson's MSJ.
[34] *Id.*; Docket No. 65, pp. 6 – 7.
[35] *Stroik v. Ponseti*, 35 F.3d 155, 159, n. 4 (5th Cir. 1994).
[36] *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 732, n. 8 (5th Cir. 2018).

establishes a violation of constitutional rights.[37]  Thus, Defendant respectfully submits Plaintiff's focus on Defendant's alleged violations of SAPD policies is without merit in determining whether there was a violation of Plaintiff's constitutional rights.

Additionally, Plaintiff relies heavily on this Court's holding in *Martin v. City of San Antonio*, alleging the facts in *Martin* and the present case are similar.[38]  Plaintiff relies on *Martin* to indicate Defendant's search of Plaintiff was unreasonable and in violation of SAPD policies.[39] However, the facts of *Martin* and the present case are quite distinguishable.  In *Martin*, "Plaintiff's evidence suggests that the scope of the particular intrusion is severe – Plaintiff's pants and underwear were pulled down in public view of male officers and passing vehicles, and Officer Woods 'fondled' her, penetrated her vagina for 'three to five minutes,' and attempted to penetrate her rectum."[40]  In the present case, the dash cam video clearly shows Plaintiff's shorts and underwear were not pulled down in public view of male officers and passing vehicles.[41]  In fact, Defendant stopped the search when an officer approached and when a truck passed by the scene.[42] Unlike the plaintiff in *Martin*, Plaintiff was not fondled, Plaintiff's vagina was not penetrated, and there was no attempt to penetrate Plaintiff's rectum.[43]  Defendant respectfully submits Plaintiff's reliance on *Martin* and allegation Defendant violated SAPD policies is without merit in determining whether there was a violation of Plaintiff's constitutional rights.

---

[37] *Id.*
[38] Docket No. 65, pp. 8 – 9.
[39] *Id.*
[40] *Martin v. City of San Antonio*, No. SA-05-CA-0020-XR, 2006 WL 2062283 at *5 (W.D. Tex. July 25, 2006).
[41] *See* Exhibit "C-1" to Defendant Wilson's MSJ.
[42] Exhibit "C", p. 3 to Defendant Wilson's MSJ; *See* Exhibit "C-1" to Defendant Wilson's MSJ.
[43] Exhibit "C", pp. 2 – 3 to Defendant Wilson's MSJ; *See* Exhibit "C-1" to Defendant Wilson's MSJ.

**c.   Narcotics Officers Developed Reasonable Suspicion Plaintiff Was Engaging in the Sale of Narcotics**

Through their training and years of experience as police officers and narcotics detectives, Larios, Clancy, and Nogle recognized the actions and behavior of Plaintiff, detailed in Defendant's Motion for Summary Judgment, to be the actions and behavior of someone engaged in the sale of illegal drugs.[44] Based on the on the communications between Clancy, Larios, and Nogle, and their observations of Plaintiff, the detectives and Nogle developed a reasonable suspicion Plaintiff was engaged in the sale of narcotics.[45] Plaintiff asserts her police practices expert, Scott DeFoe, has attested the "factual circumstances did not demonstrate even reasonable suspicion of for (sic) a frisk."[46] Plaintiff attempts to rely on the testimony of her rebuttal expert to establish a violation of Plaintiff's rights. Plaintiff's rebuttal expert testimony is only proper to the extent it rebuts Defendant's expert testimony.[47] Defendant objects to Plaintiff's rebuttal expert to the extent Plaintiff's expert attempts to affirmatively establish a constitutional violation and not merely rebut Defendant's expert testimony. Moreover, Defendant submits Plaintiff cannot establish a violation of a constitutional right on summary judgment through expert testimony alone, but must support her motion by facts establishing a constitutional violation of Plaintiff's rights by Defendant and overcoming Defendant's qualified immunity defense.[48] Defendant objects to Plaintiff's rebuttal expert's assertion that there was not reasonable suspicion justifying the search and seizure of Plaintiff, and respectfully submits the narcotics officers developed reasonable suspicion Plaintiff was engaging in the sale of illegal narcotics.

---

[44] Exhibit "F", p. 2; Exhibit "G", p. 2; Exhibit "E", p. 1 to Defendant Wilson's MSJ.
[45] Exhibit "F", p. 2 to Defendant Wilson's MSJ.
[46] Docket No. 65, p. 11.
[47] *See Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764 (1991).
[48] *Stokes v. Bullins*, 844 F.2d 269, 275 (5th Cir. 1988).

**d.     Defendant Did Not Exercise Excessive Force Against Plaintiff**

It is well established that Plaintiff must provide both notice of the nature of the claim and plausible factual allegations to support the claim.[49]  Plaintiff's live pleading makes a vague and conclusory allegation that Defendant exercised excessive force, but does not allege any facts, and the record does not reflect, that Defendant used any force at all against Plaintiff.  In her Response Plaintiff asserts that a strip search or body cavity search is a use of force, citing to *Hamilton v. Kindred*.[50]  However, Plaintiff misstates the applicability of *Hamilton* to the facts of the present case.  In *Hamilton*, the plaintiffs alleged they were subjected to a use of force, specifically the insertion of the officer's fingers into their vaginas and anuses, during the course of an investigatory stop.[51]  In the present case, Plaintiff claims that although Defendant never penetrated her vaginal cavity, Defendant squeezed on the outside of Plaintiff's vaginal lips while her hand was inside Plaintiff's underwear.[52]  However, as seen on the video recordings of Detective Zuniga's two interviews with Plaintiff, when Plaintiff describes how Defendant was squeezing Plaintiff's vaginal lips she states "[Defendant] was not on the actual flesh, like the skin, she was on my shorts because it was two layers, she was on the tights."[53]  Plaintiff's statement to Detective Zuniga was unforced in any way.  It was clear and directly on point on the issue of whether Wilson made contact with Plaintiff's skin and is a direct admission by Plaintiff that Defendant did not.  Defendant did not visually or manually inspect Plaintiff's rectal or genital body cavities.[54]  Defendant denies she ever made skin-on-skin physical contact with Plaintiff's genitals.[55]

---

[49] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).
[50] *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017).
[51] *Id*.
[52] Exhibit "A", 107:4-18 to Defendant Wilson's MSJ.
[53] Exhibit "B-1", Aug. 9, 2016 at 13:18:58; Aug. 9, 2016 at 13:42:42 to Defendant Wilson's MSJ.
[54] Exhibit "C", p. 3; *See* Exhibit "C-1" to Defendant Wilson's MSJ.
[55] Exhibit "C", p. 3.

Plaintiff's August 9, 2016 interview with Detective Zuniga is clear corroboration of Defendant's denial. Defendant respectfully submits she did not exercise excessive force against Plaintiff.

### e. Defendant Is Entitled to Qualified Immunity

Plaintiff argues Defendant is not entitled to qualified immunity and qualified immunity requires the Defendant to plead and establish entitlement to immunity.[56] However, the burden of proof shifts to the Plaintiff once the defense of qualified immunity is properly raised.[57] "The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; [its] precedent places that burden upon plaintiffs."[58] The analysis of Defendant's entitlement to qualified immunity is conducted in a two-step process. One, the court must evaluate whether the Plaintiff's allegations, if true, state a constitutional violation, and additionally, whether Defendant's actions violated "clearly established constitutional rights of which a reasonable person would have known."[59] This analysis may be conducted in any sequence.[60] "If the defendant's conduct did not violate a plaintiff's constitutional rights under the first prong, or his conduct was objectively reasonable under the second prong, he is entitled to qualified immunity."[61] Plaintiff does not demonstrate genuine issues of material fact regarding the reasonableness of Defendant's search.[62] As thoroughly explained in Defendant's Motion for Summary Judgment, Defendant's actions in conducting the search of Plaintiff's person were objectively reasonable given the totality of the circumstances Defendant faced on the date of the incident made the basis of this suit, and that she did not violate Plaintiff's Fourth Amendment rights. Defendant respectfully submits that

---

[56] Docket No. 65, p. 15.
[57] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (*quoting Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)).
[58] *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).
*Kaufman County*, 352 F.3d 994, 1002 (5th Cir. 2002); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).
[60] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).
[61] *Blackwell v. Laque*, 275 Fed. Appx. 363, 366 (5th Cir. 2008) (*citing Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).
[62] *See* Docket No. 65.

any reasonable officer, when faced with the totality of the circumstances with which Defendant was confronted, could have believed Plaintiff was concealing narcotics. Because Defendant's actions were objectively reasonable, she submits she is entitled to qualified immunity on Plaintiff's § 1983 claims of unreasonable search and seizure.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays this Court strike the above-referenced statements from Plaintiff's Response to Defendant's Motion for Summary Judgment as being inadmissible hearsay, hearsay within hearsay, and/or pure speculation, and grant Defendant's Motion for Summary Judgment and dismiss, with prejudice to the re-filing of same, all of Plaintiff's claims against Defendant, and for such other and further relief, both general and special, at law or in equity, to which Defendant may be justly entitled.

Respectfully submitted,

**HOBLIT DARLING RALLS HERNANDEZ & HUDLOW LLP**
6243 IH-10 West, Suite 601
San Antonio, Texas 78201
Telephone:  (210) 224-9991
Facsimile:   (210) 226-1544
Email: mralls@hdr-law.com

BY: _____
N. MARK RALLS
State Bar No. 16489200

**ATTORNEY FOR DEFENDANT, MARA LYNN WILSON**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 15, 2019, a true and correct copy of the foregoing instrument was sent by means indicated to the following:

| | |
|---|---|
| T. Dean Malone<br>Michael T. O'Connor<br>Law Offices of Dean Malone, P.C.<br>900 Jackson Street, Suite 730,<br>Dallas, TX 75202<br>dean@deanmalone.com<br>michael.oconnor@deanmalone.com<br>***Attorneys for Plaintiff*** | ***VIA CM/ECF*** |
| Logan Lewis, Assistant City Attorney<br>Office of the City Attorney<br>Litigation Division<br>Frost Bank Tower<br>100 W. Houston St., 18th Floor<br>San Antonio, TX 78205<br>logan.lewis@sanantonio.gov<br>***Attorneys for City of San Antonio*** | ***VIA CM/ECF*** |

                                                            N. MARK RALLS